OPINION of the Court, by
Judge Wallace.
The appellants, who were defendants in the original suit, have the elder entry as well as the elder grant; but the validity of the entry on which their grant has been obtained, need not be attended to, until the entry of James Bryant, on which the appellees found their claim, is first established ; because they being complainants, must shew that they claim under a valid entry, which is prior to the legal title of their adversaries, before they can prevail. ' The entry oh which they rely is in substance as follows : January 5, 1782, James Bryant, jun. assignee of James Bupee, enters 1000 acres, lying on the waters of Sugar creek, &c. to adjoin Henry Pawling, and to adjoin his former' entry of 1000 acres *111 oft the dividing ridge bdfween the waters of Diet’s river and Sugar creek,. to run with his northwardly line westwardly and northwardly for quantity. It appears that the date of this entry is anterior to that of the before mentioned grant; and Sugar creek, Dick’s river and the dividing ridge between their waters, which compose the general calls of this entry, are proven to have been sufficiently notorious, or ought to have been presumed to have been so, when this entry was made. To adjoin Henry Pawling, is the first special or loca-live call it contains. This expression is evidently elliptical, and it is conceived that the word land, ought to be supplied, or it must be understood to mean adjoining Henry Pawling’s land. This call is also defective in not specifying what part of Pawling’s land was to be adjoined ; but this defect may perhaps be cured by necessary implication, when the subsequent calls “ to adjoin his former entry of 1000 acres, on the dividing ridge between the waters of Dick’s river and Sugar creek, and “to run with Ins northwardly line west-wardly and northwardly for quantity.”
,,-,⅛¶,1‘⅜,⅛ pkk’s ⅛, &c. and joining ⅛⅛ which P had putchafed, ⅛⅞ „amé, having no other claim ' notorious in that
entry with the (Wveyor to be ukfn toseth?F each other._ Accord, voi. i, ^ C^~ &r>
Aa“! fílfer where com was railed /■njumed cord^voí"^!" Wiijm-v.M'Gu 34 — Mom’s v prant
hound to ⅛-m-film part of hi» claim — Aerará ment & fettle»"
where anea, ‘¶ d?pends on a settlement to-cation, it ¡$ne-ceffary to pro-c(°P!f LmTfef eeL. ~ ^iffioners, the entry with the furveyor alone Is not iuJB cleat
*111 It is moreover satisfactorily proven, that in the fall of the year 1779, Julius Sanders obtained from the commissioners a certificate for a settlement and pre-emotion in this vicinity ; and that before the 5th of January 1782, the generality oi those who resided at the adjacent stations, had seen or been informed where the claims of Sanders were situated, and that be had sold one or both of them-to Pawling. This, it is con - ceived, explains what was meant by adjoining Henry Pawling ; it was the land which he had purchased of Sanders ; more especially as it is not shewn that Paw-ling claimed any other laud in that quarter. But it is not shewn that the precise quantity or situation of Paw-Img s purchase was generally known. George S. Smith, who in (he fell 1779, was an intimate of Paw-ling’s, and conversed with him on the subject, deposes, that he understood and believed Pawling had purchased both the settlement and pre-emption; and from the exhibits in this cause, it cannot now be discovered with • . •/ - , - ■ i r , . r v certainty, what was the extent of his purchase. It can only be conjectured from the surveyor’s report, that the pre-emption has been, at some time and by some per-softj assigned to George Meriwether 7 but ij this fact *112 was more certain, still it might be true that Pawling was the owner when the entry under investigation was made. There is indeed no doubt as to Pawling’s being thfc purchaser of the settlement, hor that he was generally reputed to have been so, prior to the date of the entry in question. Its ehtry is as follows : “November 3, 1779, Héhry Pawling, assignee ,of Julius Sanders, enters 400 acres by virtue of ⅜ certificate for settlement, ob the head of a creek called Boone’s Mill creek, about four miles from Dick’s river, and about twelve miles from St, Asaph’s.” But the certificate from the commissioners is not exhibited, Which ought nbt to hate been dispensed with, but by consent ; and at any rate, the emission may be fatal to the claim of the ap-pellees, inasmuch as it is a well settled general principle, that the location of a settlement with thé commissioners and its entry with the surveyor should be taken together, a fid be permitted to explain each other. If this settlement was obtained for residence or raising a erdp of corn on the premises, the improvement or place of residence (which mtist be presumed to have been notorious) was by law required to be included in some part of tbe settlement, and was certainly called for in its location with the commissioners, notwithstanding it is omitted in tbe entry with the surveyor. And this would have rendered the call for the head of Boone’s Mill creek nothing more than general description, which would not have confided the particular form or situation of the settlement. But if this settlement was of the kind which was to be located ©n vacant land, yet (as is found in a number of similar cases) there may be a call in its location with the commissioners for an improvement ; and this is rendered more probable by the testimony of James Crawford, who deposes that on the waters of Boone’s creek, near to where Henry Paw-ling’s bouse now stands, he saw, in the year 1780, an improvement and a black walnut tree marked, and understood that the improvement was Pawling’s or Sanders’s. If this improvement is well described in the certificate, or could be proven to have been notorious about the first of January 1782, it would give validity to the settlemenit right, or fix its precise situation ; and then the call to adjoin Henry Pawling would so far be rendered special and precise ¡ W&ereas its ea»y with the *113 surveyor, when taken alone, is too indefinite to be supported. Should the call for the head of Boone’s Mill creek be considered as general description, the entry will be left without any particular locative call, which, would vitiate the entry of the appellees, of which it is an essential or radical part. Or should the call be considered as particular and precise, it must mean the head of the longest prong of the creek ; which, from the surveyor’s report, appears to be far distant from the ground on which the settlement has been surveyed ; and then if the entry of the appellees should be surveyed adjoining thereto, and agreeably to its «ther calls, so far as they can be understood, no interference with the claim of the appellants would be produced. But here it is proper to observe, that Boone’s creek is one of the waters of Dick’s river, adjacent or opposite to the waters of Sugar creek ; and it may be inferred from several of the depositions, that it was generally known by tnat name at an early day, and that it is the same watercourse which in, Pawling’s entry is styled Boone’s Mill creek. And it ought to be further observed, that Bartholomew Fenton deposes, that in the year 1781, he understood that where Henry Pawling lives was the bead of Boone’s creek ; and that it was then generally called the head of Boone’s creek. , But it appears from the surveyor’s report, that there is a prong of Boone’s creek, more than a mile longer than the one on which Pawling’s settlement has been surveyed, and on which he resides ; which induces strong grounds to suppose that Fenton was mistaken, or that he only meant ⅛⅝6 Pawling lived on one of the head branches of Boone’s, creek ; for it cannot be credited that so great an error:: or mistake of the fact, would have generally prevailed, until it is rationally accounted for ; which has not been done- Therefore, this court is of opinion, that Fenton’s testimony ought not to be taken as conclusive evidence to fix the true situation of Pawling’s settlement. And It is equally clear to this court, that Pawling’s survey, on which the decree under consideration seems tobe founded, ought not to be taken as the land of fclenry Paw-ling, v. uich is intended in the entry of the appellees ; because it appears to have been made as late as November 2.3d, 1781, only about six weeks before, their ír.try, and when It was not even required to have bees *114 of record ; and if it had been, was not accessible to other locators. It is indeed proven, that nearly the same land was run out for Pawling in the fall of the year 1779 ; but that survey not having been recorded, and not proven to have been generally known, cannot be considered as legal notice. It is conceived that enough has been said to evince that the entry of the appellees ought not to have been sustained by the court below : which renders it unnecessary to decide more explicitly on the other calls it contains.
The head of M Creek, means the fcurce of the longeft branch, unlefs general reputation had given the appellation to another.
To eftablííh iuch reputation on an inferior branch, the t-Viaence ftould be forcible— Same principle Wkitahr v, ¿tall, 1 vols 75
A furvey osty 6 weeks old, cannot fuppoit adepei dant en. Jry without proof of notoriety— Vide ift ⅜«|. €33, rule *4-
Such furvey, «fen if recorded, was not ac-cesible to other locators— Ace-foi„ 1, ÍShalle v- Gaiicivay) 140 —Ward v. Lee, eff.gr.ee cf , Ycrng, ⅞7— JM'Creciiti 111. ¿reels. 48 — xft Crunch, ff'iijm m. Mejor,, ico
A fuivey long Blade but never «corded, and sot notorious, cannot be conli-ieted as legal notice, not uphold a depen-dant entry.
*114 Decree reversed, and order to dissolve injunction and dismiss die bill with costs.